## City of Catlettsburg et al. v. Davis' Adm'r.

(Decided Feb. 21, 1936.)

W. D. O'NEAL and JOHN E. McCALL for appellants.

DYSARD & TINSLEY and JOHN W. McKENZIE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal prosecuted from a decree of the chancellor rendered in the equitable action brought by the administrator of W. J. Davis to compel the city council of Catlettsburg, Ky., by mandatory injunction,

to lay a special levy of 35 cents of each $100 of taxable property for providing a sufficient fund for paying a prior judgment recovered in appellee's tort action against it for $5,502 damages and costs.

The original action was brought by the administrator of W. J. Davis, deceased, in the Boyd circuit court to recover of the city of Catlettsburg, Ky., damages for his death, alleged caused by its negligence in maintaining its street in question in such a defective condition as to render it unsafe for use, and by reason of which the deceased was killed while driving thereover.

Upon trial of the cause, a verdict for $5,502, as compensatory damages, was recovered by his estate. Upon appeal prosecuted by the city from that judgment, it was affirmed. City of Catlettsburg v. Davis' Adm'r 255 Ky. 382, 74 S. W. (2d) 341. Thereupon execution issued upon the affirmed judgment, which was returned "no property found."

The city, persisting in its failure and refusal to pay the judgment, the appellee as administrator of W. J. Davis, deceased, instituted this second action in equity against the mayor, members of the city council, and treasurer, alleging that he was without adequate remedy at law and could not enforce collection of his judgment except by the process of mandatory injunction, and prayed for an order by injunction requiring the city council to lay and collect a levy of 35 cents per $100 for the year 1935 upon all taxable property situated within the city to pay and satisfy his judgment, for its application thereto, and for all general and special relief.

To this petition in equity the appellant city filed a general demurrer, which was overruled, whereupon it filed answer and amended answer, pleading, in substance, that it had no funds with which to pay the judgment and, further, that under the provisions of section 157 of the Constitution, it was prohibited from laying the additional levy sought by appellee, in that it had found it necessary, prior to the institution of appellee's action, to levy the maximum amount allowable to it thereunder, as a city of the fourth class, of 75 cents on each $100 of taxable property within its limits, and that the revenue derived from such levy was

only sufficient to pay its necessary governmental functions, with the result that, by reason of the inhibition of section 157 of the Constitution, it was now without power to increase its rate of taxation over that already levied of 75 cents on the $100; also that the making of the special levy asked for paying appellee's judgment would work a hardship upon its inhabitants; and, further, that, as the city had, by general ordinance, previously fixed the 1st of April as the date upon which it would fix its annual tax levy the court was without power to direct an additional special levy to be made thereafter for such year.

By its amended answer, it further denied that plaintiff had, before filing his suit in equity, made demand that it lay a special levy for payment of its judgment, or that it had refused to pay the alleged demand, or that plaintiff had the right to procure by mandatory injunction, or otherwise, the special levy sought, above the 75 cents maximum tax rate levied, to enforce payment of its judgment.

Appellee's demurrer was sustained to the answer and amended answer when, appellant refusing to plead further, the cause was submitted to the court upon appellee's verified petition and motion that the appellant city be required to lay a special tax levy and collect taxes thereunder in a sum sufficient to pay and discharge appellee's judgment.

The chancellor adjudged that appellee was entitled to have the special levy made and collected at the rate asked, and that appellants be ordered and required to pass an ordinance laying the special levy and for its collection and application to payment of appellee's judgment, interest, and costs.

From this judgment the city has appealed, contending same is error, in that its demurrer to the petition should have been sustained, for the following reasons: (1) That, if appellee has a remedy, it is by writ of mandamus and not by mandatory injunction; (2) that no demand was first made upon the board or council to lay the levy, which it insists is essential before a right of action in equity therefor accrues; and (3) that the court erred in ordering the laying of an additional levy in violation of section 157 of the Constitution which prohibits the city council of cities of the fourth

class (as is Catlettsburg) from levying a tax in excess of 75 cents on the $100 of taxable property, except for indebtedness created before the adoption of the present Constitution or when voted by two-thirds of the voters at an election called for that purpose.

We will now consider these objections in the order presented.

The first is that appellee's remedy, if he have one, is by writ of mandamus and not by that of mandatory injunction. A writ of mandamus is defined by section 477 of the Civil Code of Practice as an order of a court commanding an executive or ministerial officer to perform an act or omit to do an act, the performance or omission of which is enjoined by law. It may be conceded that the writ of mandamus provides a proper remedy for compelling the public officers of the appellant city to perform the ministerial act of levying the special tax here ordered laid by them, for providing funds for the payment of the appellee's judgment. Hager v. New South Brewing Co., 90 S. W. 608, 28 Ky. Law Rep. 895; section 474, Civil Code of Practice. But it does not follow from this that mandamus is, under any and all circumstances, the exclusive remedy allowed or available for compelling such affirmative action or for requiring their performance of purely ministerial duties, or that they may not in proper instance be appropriately ordered by the process of mandatory injunction to so perform or act. To such effect it was held in Potter v. Campbell, 155 Ky. 784, 160 S. W. 763, that, while mandamus will lie to compel members of the board of election commissioners, who are ministerial officers, to assemble and discharge the duties required of them by law, that remedy is often too slow to afford adequate relief, and so a mandatory injunction may be issued. See, also, Riddell v. Childers, 156 Ky. 315, 160 S. W. 1067; Riddell v. Grinstead, 156 Ky. 319, 160 S. W. 1069; Feagain v. Dark Tobacco Growers' Co-op. Ass'n, 202 Ky. 801, 261 S. W. 607, wherein the process of mandatory injunction was employed to compel the doing of ministerial acts by public officers, because the remedy of mandamus was, under the facts found in those cases, inadequate. Compare, also, as in harmony with our position in this, the case of Miguel v. McCarl, 291 U. S. 442, 54 S. Ct. 465, 78 L. Ed. 901, wherein a disburser of public funds was by man-

datory injunction ordered to pay plaintiff's voucher, when payment was found to be, under the involved statute, only the performance by him of a ministerial duty of his office. The court in so holding stated that, though a writ of mandamus in such case offered the proper remedy for compelling performance by public officers of their ministerial duties, yet they could also be so required to act by mandatory injunction as well, in that both remedies could in such case be treated as equivalent and governed by like considerations.

To like effect is this procedural rule announced in the domestic case of O'Connor v. Weissinger, 142 Ky. 447, 134 S. W. 1126, where, in so holding, it was said that though, under section 477, Civil Code of Practice, mandamus lies to compel the performance by public officers of their ministerial duties, the fiscal court might be compelled to allow plaintiff's salary claim as a road supervisor by mandatory injunction; that in such case, where plaintiff seeks an injunction in a matter where the proper remedy is mandamus and the defendant does not demur or move to transfer the cause to the law docket, the court will try the case as an application for mandamus, deeming it proper to waive such informality in the proceeding and consider the case as if it were an application for a mandamus.

While it appears that the appellant did, as stated supra, here demur to the petition, it yet saw fit not to stand thereon, nor did it move to transfer the case to the law docket, but proceeded to make defense by answer, nor later upon submission did it object to the procedure when a mandamus was issued ordering it to lay the levy.

In Farley et al. v. Gibson et ux., 235 Ky. 164, 30 S. W. (2d) 876, 877, it appeared that plaintiffs had misconceived their right, under the facts pleaded and shown by the evidence to have reformation of the contract decried, where there was no showing of mutual mistake in the terms of the contract, even though there was evidence that it was obtained by the fraud or improper conduct of the defendant. The court, in discussing appellants' rights, said:

"It does not follow, however, that no relief may be granted. It is provided by the Civil Code that 'the petition must state facts which constitute a

cause of action in favor of the plaintiff against the defendant, and must demand the specific relief to which the plaintiff considers himself entitled; and may contain a general prayer for any other relief to which the plaintiff may appear to be entitled.' Civil Code Practice, sec. 90. If defense be made, a judgment may be rendered for any relief to which the plaintiff may appear to be entitled and which is within the jurisdiction of the court to grant. Alexander v. Owen County, 136 Ky. 420, 124 S. W. 386; Cooper v. Williamson, 191 Ky. 213, 229 S. W. 707; Bridgford v. Barbour, 80, Ky. 529; Heckling v. Gehring's Ex'r, 100 S. W. 824, 30 Ky. Law Rep. 1198; Harbison-Walker Refractories Co. v. McFarland's Adm'r, 156 Ky. 44, 160 S. W. 798. In this case the facts were stated, and there was a general prayer for appropriate relief. Since a defense was interposed, and the case was fully prepared, it was within the power and province of the court to render such judgment as might be required to effectuate the rights of the parties.''

Such appears to be the situation here presented. The appellant here, as there, made defense by answer to plaintiff's petition containing a general prayer for relief. Also it made no objection to the ruling of the court when, upon submission of the cause, it issued a writ of mandamus against defendant. We therefore conclude that, under such circumstances, appellant may be regarded, by reason of his having interposed defense to a petition stating a cause of action, in having failed to transfer the cause to the law docket, and further in having failed to object to the court's later issuing of the writ of mandamus, as having waived the informality of the chosen equitable procedure and warranted the court's rendering such judgment as appeared required to effectuate the rights of the parties.

Appellant's next objection is that the court erred in overruling its demurrer to the petition, upon the alleged ground that no application or demand was made on appellant to lay a special levy before the filing of appellee's petition.

It is to be noted that the petition charges that appellee had made demand for payment, which had been

repeatedly refused upon the grounds that the city had no funds available for paying the judgment. It also alleges that execution was issued and returned "no property found." It is true that the allegation that demand was made is denied by the answer, but in view of the admitted fact of appellee's having had execution issued upon his judgment recovered against the city, seeking its collection, it is idle to contend that no demand was made. In such instance the parties can hardly be said to have joined issue upon the question of having made demand for payment, where the record itself discloses demand to have been so positively made by execution issued.

Such contention is well answered by the apt language of the opinion found in the case of Maddox et al. v. Graham & Knox, 2 Metc. (59 Ky.) 56, cited by appellee, wherein it was contended that there had never been an actual refusal to levy the tax, and consequently no motion for mandamus could be entertained. To this contention the court there said:

"The pleadings and proof make it quite clear that the council had no intention to levy the tax; indeed, they were resolved not to do so. * * * In the face of the record, it seems to the court almost frivolous to say, 'there had never been any actual refusal to levy the tax'."

Here appellant's answer also very conclusively discloses that it had no intention of levying the tax required to pay the judgment, until so ordered by the court, over its urged objections, to do so.

Appellant's final contention is that, by section 157 of the Constitution, the council is prohibited from levying a tax in excess of 75 cents on the $100, which by the court's judgment it is here erroneously ordered to do, in directing that it levy an additional special tax of 35 cents on the $100 to provide revenue for paving the appellee's judgment. Appellant states that it is aware that the court has written into the Constitution by interpretation a further exception, in addition to those therein expressly named, providing for collecting judgments for tort. With this statement of appellant's we concur, and further state that we regard this named exception as having been made and resting upon sound and salutary legal principles, as same is forcefully dis-

cussed in the case of Menar v. Sanders, 169 Ky. 285, 183 S. W. 949, 950, L. R. A. 1917E, 422, wherein it was said:

"It is the contention of appellants that under no circumstances has a city of less than 10,000 population * * * the right to levy a tax, for other than school purposes, in excess of 75 cents on the $100 of taxable property in the city; and that as the Oakdale tax rate has already reached that limit, and the whole of the tax realized is required to pay the current governmental expenses of the city, interest on its bonded indebtedness, and provide a sinking fund for the retirement of the bonds at maturity, it cannot legally be compelled to levy a further or additional tax to pay appellee's judgment."

After a full and thorough consideration of the question and an exhaustive discussion of the numerous authorities cited, the court concluded its opinion as follows:

"We regard the authorities supra decisive of the question under consideration, as they convincingly demonstrate that for a neglect of duty of the kind here complained of the city is liable, even though it has reached the limit of its power to contract debts and levy taxes. To hold otherwise would permit such municipalities, in every case like this, to take advantage of their own negligence and remove every incentive to the keeping of their streets and sidewalks in such repair as would make them reasonably safe for the use of the public."

Fully concurring in the conclusion reached in the Menar Case and regarding it as decisive of the like question here raised and so decided by the trial court, its judgment is affirmed.